## IN THE MATTER OF THE ADOPTION OF: BABY GIRL S
### Case No. 89-45263 FC 20
Eleventh Judicial Circuit, Dade County

December 6, 1989

## OPINION OF THE COURT

FRED MORENO, Circuit Judge.

### *ORDER DETERMINING VALIDITY OF CONSENT*

THIS CAUSE came on to be heard on Petitioner's Motion for a Determination on the validity of the written consent to the adoption of the above captioned minor by the Petitioner.

This Court heard an evidentiary hearing, with a court reporter. At such hearing the Court considered the transcript dated September 13, 1989 at 1:40 p.m. of the biological mother, a thirty-two year old woman, where she relinquished all rights, control custody of the child despite being aware of the availability of governmental assistance. The mother, H.M.A. further stated that no one coerced or forced her consent to adoption. Such consent was further obtained in writing and notarized.

At the evidentiary hearing H.M.A., appearing *pro se*, agreed that she consented to the adoption, but changed her mind several days after the consent was signed. She admitted she had the counselling of an attorney acting as *Guardian ad litem*, a Health and Rehabilitative Services counselor, and a hospital socialworker. All those witnesses testified at the evidentiary hearing concerning the knowing and voluntary consent. H.M.A. in response to that testimony, testified that several days after the birth and subsequent to the consent being signed, she changed her mind. She stated that among the reasons for giving consent originally was that the child was a product of a non-consensual sexual act, she was new in town and unemployed. At that time she had spoken with relatives living in the Miami area. H.M.A. further testified that she had the many months of pregnancy to think about the adoption. However, after the consent she obtained a job, as a waitress and as a result wanted her child back to live with her two other children.

This case is similar to *Hinkdman v Bischoff*, 534 So.2d 743 (Fla. 2d DCA 1988) where that Court's compassion caused it to suggest that the legislature reassess the current adoption statutes and consider the wisdom of a "cooling-off" or grace period. Likewise here, the Court is aware of the state of H.M.A.'s feelings. Nevertheless, it is undisputed that the terms of the consent, including its irrevocability, were explained to her. In fact, H.M.A. had asked to be in a different floor from the child. It is evident that H.M.A. was fully aware of the consequences of her voluntary consent. The Court has no choice but to find that such consent was not obtained by fraud or duress, but in fact was a conscious and generous decision by the natural mother to give up the baby due to her financial condition, the manner of conception, and the best interests of the child. "Absent a finding of fraud, duress, or undue influence, a natural parent's consent to an adoption is valid and irrevocable upon execution of the written consent." *Matter of Adoptive Doe*, 543 So.2d 741 (Fla. 1989).

Under the legislative mandate of F.S. § 63.082(5), this court has no choice but to determine the consent valid and irrevocable. It is up to the legislature, in balancing the rights and welfare of the child and natural and adopting parents, to provide for a grace period similar to installment purchases. Absent such legislative intent, under the facts of this case showing full compliance with Chapter 63, *Florida Statutes*, the Court finds valid and irrevocable consent and allows petitioners to seek adoption of minor child. The final decision on the suitability of the adoptive parents will be made at the appropriate time after the evidence presented on that issue. However, it must be noted that the suitability of the adopting couple is not in dispute.

DONE and ORDERED this 6th day of December, 1989.